UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

UNITED STATES OF AMERICA,

vs.                                       Case Nos.:   4:17cr24/MW/MAL
                                                       4:20cv266/MW/MAL

MICHAEL CHMIELESKI,
        Defendant.
_____

## **REPORT AND RECOMMENDATION**

This matter is before the court upon Defendant Michael A. Chmieleski's

Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255.[1] ECF No.

86. The Government responded in opposition (ECF No. 88) and Defendant filed a

reply. ECF No. 91. After review of the record and relevant law, the undersigned

recommends that the § 2255 motion be denied without an evidentiary hearing. *See*

Rules Governing Section 2255 Cases 8(a) and (b).

---

[1] The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b).

# I.    BACKGROUND

On April 18, 2017, a federal grand jury charged Defendant with knowingly attempting to entice a minor to engage in sexual activity in violation of 18 U.S.C. § 2422(b). ECF No. 1. The charges stemmed from Defendant's arrest during an undercover sting operation called "Cupid's Arrow" that was aimed at identifying individuals attempting to sexually exploit children through the internet. *See* ECF No. 68 at 89-90, 126; ECF No. 69 at 117. Details about the sting operation and the conversations between Defendant and the undercover agent are set forth in Defendant's Presentence Investigation Report and the Government's response to the § 2255 motion. *See* ECF No. 55; ECF No. 88 at 1-10.

Defendant exercised his right to a jury trial. Retained counsel R. Timothy Jansen and Ryan Robert Davis represented him at the three-day trial at which Defendant testified at length. ECF Nos. 68-70. The jury returned a guilty verdict. ECF No. 46.

The Final Presentence Investigation Report (PSR) determined Defendant had a total offense level of 32. ECF No. 55, PSR ¶ 32. Defendant's base offense level of 28 was increased by two levels because he used a computer, and an additional two levels for obstruction of justice due to his false testimony at trial. PSR ¶¶26, 29.

Defendant had two criminal history points, establishing a criminal history category of II. PSR ¶¶ 39-40. The corresponding advisory guidelines range was 135 to 168 months, and the statutory minimum term of imprisonment was ten years. PSR ¶¶ 68, 69. At sentencing the Court found the obstruction adjustment did not apply, thus yielding a guidelines range of 120 to 135 months. ECF No. 58. The court sentenced Defendant to the statutory mandatory minimum term of 120 months' imprisonment. ECF No. 57.

Defendant appealed, represented by retained counsel Michael Ufferman. He argued the district court erred in denying his motion for a judgment of acquittal and the Government failed to present sufficient evidence of his guilt. ECF No. 74. Defendant specifically challenged the sufficiency of the Government's proof of his intent to commit the crime and alternatively his predisposition to commit the crime for purposes of defeating his entrapment defense. *Id.* at 5. The Eleventh Circuit found there was sufficient evidence from which a reasonable jury could find Defendant was ready and willing to entice a minor before his contact with the alleged minor and he was not entrapped. *Id.* at 10. It affirmed his conviction on February 8, 2019.

Defendant's § 2255 motion was timely filed pursuant to the prison mailbox rule on May 7, 2020. He raises three grounds for relief. He claims (1) the Government failed to prove every element of the offense beyond a reasonable doubt; (2) his attorney was constitutionally ineffective in four separate respects; and (3) the Government violated its duty to ensure a fair trial because (a) it encouraged witness tampering and (b) Government agents exceeded their authorization. The Government opposes the motion.

## II.    ANALYSIS

A. <u>2255 Standards</u>

"Section 2255 does not provide a remedy for every alleged error in conviction and sentencing." *Spencer v. United States*, 773 F.3d 1132, 1138 (11th Cir. 2014). A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255(a). "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if

condoned, result in a complete miscarriage of justice.'" *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).

The law is well established that a district court need not reconsider issues raised in a section 2255 motion that have been resolved on direct appeal. *Stoufflet v. United States*, 757 F.3d 1236, 1239 (11th Cir. 2014); *Rozier v. United States*, 701 F.3d 681, 684 (11th Cir. 2012); *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000); *Mills v. United States*, 36 F.3d 1052, 1056 (11th Cir. 1994). Once a matter has been decided adversely to a defendant on direct appeal, it cannot, except in the case of an intervening change in the law, be re-litigated in a collateral attack under section 2255, as it is procedurally barred. *Seabrooks v. United States*, 32 F.4th 1375, 1383-84 (11th Cir. 2022) (citing *Nyhuis*, 211 F.3d at 1343 (collecting cases); *Davis v. United States*, 417 U.S. 333, 342 (1974)). Broad discretion is afforded to a court's determination of whether a particular claim has been previously raised. *Sanders v. United States*, 373 U.S. 1, 16 (1963) ("identical grounds may often be proved by different factual allegations … or supported by different legal arguments … or couched in different language … or vary in immaterial respects").

By contrast, a "procedural default" occurs when a defendant attempts to raise a new challenge to his conviction or sentence in a § 2255 motion that could have

been, but was not, raised on appeal. *Seabrooks*, 32 F.4th at 1384 (citing *Lynn*, 365 F.3d at 1234). If a defendant fails to raise an issue on direct appeal, he may not present the issue in a § 2255 proceeding unless his procedural default is excused. *Id.* (citing *McKay v. United States*, 657 F.3d 1190, 1196 (11th Cir. 2011)). To overcome a procedural default, a defendant must show either (1) cause and prejudice, or (2) a miscarriage of justice or actual innocence. *Id.*; *Granda v. United States*, 990 F.3d 1272 (11th Cir. 2021). The Government can waive the affirmative defense of procedural default. *Seabrooks,* 32 F.4th at 1384 (citing *Foster v. United States*, 996 F. 3d 1100, 1106-07 (11th Cir. 2021)).

Ineffective assistance of counsel claims are properly raised by a § 2255 motion regardless of whether they could have been brought on direct appeal. *Massaro v. United States*, 538 U.S. 500, 503 (2003); *see also United States v. Franklin*, 694 F.3d 1, 8 (11th Cir. 2012); *United States v. Campo*, 840 F.3d 1249, 1257 n.5 (11th Cir. 2016).

To prevail on a claim of ineffective assistance of counsel, a defendant must show (1) his attorney's representation fell below "an objective standard of reasonableness," and (2) a reasonable probability exists that, but for counsel's unprofessional conduct, the result of the proceeding would have been different.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984). A "§ 2255 movant 'bears the burden to prove the claims in his § 2255 motion.'" *Beeman v. United States,* 871 F.3d 1215, 1222 (11th Cir. 2017) *(quoting Rivers v. United States,* 777 F.3d 1306, 1316 (11th Cir. 2015)); *Johnson v. Alabama*, 256 F.3d 1156, 1176 (11th Cir. 2001) ("The petitioner bears the burden of proof on the 'performance' prong as well as the 'prejudice' prong of a *Strickland* claim, and both prongs must be proved to prevail."). In applying *Strickland*, the Court may dispose of an ineffective assistance claim if a defendant fails to carry his burden on either of the two prongs. *Strickland*, 466 U.S. at 697; *Brown v. United States*, 720 F.3d 1316, 1326 (11th Cir. 2013); *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000) ("[T]he court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.").

In determining whether counsel's conduct was deficient, this court must consider "whether counsel's assistance was reasonable considering all the circumstances." *Strickland*, 466 U.S. at 688; *see also Dingle v. Sec'y for Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007). Reviewing courts "must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689; *see also Chandler v. United*

*States*, 218 F.3d 1305, 1315–16 (11th Cir. 2000) (discussing presumption of reasonableness of counsel's conduct); *Lancaster v. Newsome*, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation"). Counsel's performance must be evaluated with a high degree of deference and without the distorting effects of hindsight. *Strickland*, 466 U.S. at 689. To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Hollis v. United States*, 958 F.3d 1120, 1122 (11th Cir. 2020) (citation omitted); *Chandler*, 218 F.3d at 1315. The fact that a particular defense ultimately proved to be unsuccessful does not demonstrate counsel's ineffectiveness. *Chandler*, 218 F.3d at 1314. "Counsel is not required to present every nonfrivolous defense," since "[s]tacking defenses can hurt a case." *Id.* at 1315. Rather, "[g]ood advocacy requires winnowing out some arguments ... to stress others." *Id*. When reviewing the performance of an experienced trial counsel, the presumption that counsel's conduct was reasonable is even stronger, because "[e]xperience is due some respect." *Id.* at 1316 n.18.

To establish the second prong, prejudice, a defendant must show that, but for counsel's deficient performance, the outcome of the proceeding would have been

different. *Strickland*, 466 U.S. at 694; *Jenkins v. Comm'r, Ala. Dep't of Corr.,* 963 F. 3d 1248 (11th Cir. 2020) (quoting *Harrington v. Richter*, 562 U.S. 86, 112 (2011)). For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him." *Lockhart v. Fretwell*, 506 U.S. 364, 369–70 (1993); *Allen v. Sec'y, Fla. Dep't of Corr.*, 611 F.3d 740, 754 (11th Cir. 2010). A defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Lockhart*, 506 U.S. at 369 (quoting *Strickland*, 466 U.S. at 687).

It is the defendant's burden to provide factual support for his contentions regarding counsel's performance. *See Beeman v. United States,* 899 F.3d 1218, 1218 (11th Cir. 2018); *Smith v. White*, 815 F.2d 1401, 1406–07 (11th Cir. 1987). Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the *Strickland* test. *See Boyd v. Comm'r, Ala. Dep't of Corr.*, 697 F.3d 1320, 1333–34 (11th Cir. 2012); *Dale v. United States*, 809 F. App'x 727, 728 (11th Cir. 2020) (citing *Wilson v. United States*, 962 F.2d 996, 998 (11th Cir. 1992)); *Stano v. Dugger*, 901 F.2d 898, 899 (11th Cir. 1990) (*citing Blackledge v. Allison*, 431 U.S.

63, 74 (1977)). A defendant must identify the errors or omissions of which he complains and explain how they affected the outcome of the proceedings. *Boyd*, 697 F.3d at 1333. A silent record is not sufficient to disprove the strong and continuing presumption of effective representation. "[W]here the record is incomplete or unclear" about counsel's actions, the court "will presume that he did what he should have done, and that he exercised reasonable professional judgment." *Harvey v. Warden, Union Corr. Inst.,* 629 F.3d 1228, 1239 (11th Cir. 2011) (*quoting Chandler*, 218 F.3d at 1314, n. 15). Where "the evidence does not clearly explain what happened, or more accurately why something failed to happen, the party with the burden loses." *Romine v. Head*, 253 F.3d 1349, 1357 (11th Cir. 2001); *Williams v. Head*, 185 F.3d 1223, 1227–28 (11th Cir.1999); *accord Wood v. Allen*, 542 F.3d 1281, 1305 (11th Cir. 2008) (holding that where defendant did not rebut the presumption that counsel's decision not to present certain evidence was reasonable, his ineffective assistance of counsel claim must be denied).

Furthermore, counsel is not constitutionally deficient for failing to preserve or argue a meritless claim. *Hollis v. United States,* 958 F.3d 1120, 1124 (11th Cir. 2020) (counsel not constitutionally ineffective for failing to raise meritless objection to use of prior drug convictions as predicate offenses under ACCA); *Denson v. United*

*States*, 804 F.3d 1339, 1342 (11th Cir. 2015). This is true regardless of whether the issue is a trial or sentencing issue. *See, e.g.*, *Sneed v. Florida Dep't of Corrections*, 496 F. App'x 20, 27 (11th Cir. 2012) (failure to preserve meritless *Batson* claim not ineffective assistance of counsel); *Lattimore v. United States*, 345 F. App'x 506, 508 (11th Cir. 2009) (counsel not ineffective for failing to make a meritless objection to an obstruction enhancement); *Brownlee v. Haley*, 306 F.3d 1043, 1066 (11th Cir. 2002) (counsel was not ineffective for failing to raise issues clearly lacking in merit).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail … are few and far between." *Chandler*, 218 F.3d at 1313. This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted. *Dingle*, 480 F.3d at 1099; *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000). Lawyers in every case could have done something more or different, and the issue is not what is possible, but only what is constitutionally compelled. *Chandler*, 218 F.3d at 1313. An attorney's performance is not deficient in hindsight just because he or she made one choice versus another. *Scott v. United States*, 890 F.3d 1239, 1259 (11th Cir. 2018).

It is difficult to establish ineffective assistance when counsel's overall performance indicates active and capable advocacy. *Harrington v. Richter*, 562 U.S. 86, 111 (2011). "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'" *Dingle*, 480 F.3d at 1099 (quoting *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983)); *Sylvin v. United States*, 679 F. App'x 975, 976 (11th Cir. 2017). The Sixth Circuit has framed the question as not whether counsel was inadequate, but rather whether counsel's performance was so manifestly ineffective that "defeat was snatched from the hands of probable victory." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992). Regardless of how the standard is framed, under the prevailing case law it is abundantly clear that a moving defendant has a high hurdle to overcome to establish a violation of his constitutional rights based on his attorney's performance. A defendant's belief that a certain course of action that counsel failed to take might have helped his case does not direct a finding that counsel was *constitutionally ineffective* under the standards set forth above.

An evidentiary hearing is unnecessary when "the motion and files and records conclusively show that the prisoner is entitled to no relief." *See* 28 U.S.C. § 2255(b);

*Rosin v. United States*, 786 F.3d 873, 877 (11th Cir. 2015); *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008). Not every claim of ineffective assistance of counsel warrants an evidentiary hearing. *Gordon*, 518 F.3d at 1301 (citing *Vick v. United States*, 730 F.2d 707, 708 (11th Cir. 1984)). To be entitled to a hearing, a defendant must allege "reasonably specific, non-conclusory facts that, if true, would entitle him to relief." *Griffith v. United States*, 871 F. 3d 1321, 1329 (11th Cir. 2017). A hearing is not required on frivolous claims, conclusory allegations unsupported by specifics, or contentions that are wholly unsupported by the record. *See Winthrop‑Redin v. United States*, 767 F.3d 1210, 1216 (11th Cir. 2014) (explaining that "a district court need not hold a hearing if the allegations [in a § 2255 motion] are … based upon unsupported generalizations") (internal quotation marks omitted); *Peoples v. Campbell*, 377 F.3d 1208, 1237 (11th Cir. 2004). Even affidavits that amount to nothing more than conclusory allegations do not warrant a hearing. *Lynn*, 365 F.3d at 1239. Finally, disputes involving purely legal issues can be resolved by the court without a hearing.

B. Defendant's Claims

1. Sufficiency of the Evidence

Defendant first claims his conviction violated due process of law because the Government failed to prove every element of the offense beyond a reasonable doubt. ECF No. 86 at 13. Defendant focuses his argument on proof of intent.

Defendant unsuccessfully challenged the sufficiency of the evidence of intent on appeal. The Eleventh Circuit found "a reasonable jury could find beyond a reasonable doubt that Chmielewski intended to cause a minor to assent to engaging in sexual activity." ECF No. 74 at 7.

The law does not permit a defendant to re-raise arguments in a § 2255 proceeding that were rejected on direct appeal. *Seabrooks*, 32 F.4th at 1383; *Sanders*, 373 U.S. at 16. Therefore, the claim is procedurally barred. *Seabrooks*, 32 F.4th at 1383. To the extent Defendant raises a slightly different variation of the claim raised on appeal by attacking the jury instructions[2] or arguing that the law requires an "elevated intent" (ECF No. 86 at 13), his claims are procedurally defaulted. *Id.* at 1384 (citing *Lynn*, 365 F.3d at 1234). Defendant has not shown cause to excuse the

---

[2] The court instructed the jury at Defendant's trial that the elements of the crime of enticement of a minor to engage in sexual activity required proof beyond a reasonable doubt that the Defendant "believed the individual to be less than 18 years old." ECF No. 70 at 493-94.

procedural default and he is not entitled to relief. *Id.* at 1384; *United States v. Granda,* 990 F.3d 1272, 1286 (11th Cir. 2021).

2.  Ineffective Assistance of Counsel

Defendant raises four claims of ineffective assistance of counsel which will be discussed in turn.

a.  Failure to Disclose Juror Bias

Defendant contends his attorneys were constitutionally ineffective for failing to challenge a potentially biased juror or bring the potential bias to the court's attention.

Defendant explains that a week before his arrest on the charges in this case, he and his then-girlfriend, Melissa Meadows Gramling broke up. ECF No. 86 at 14. He describes the break-up as "acrimonious" and states that the hostility continued thereafter. He claims Juror No. 1, Owen Hardin, was a friend of, or "friendly with", Ms. Meadows Gramling, although he does not provide any detail about the friendship. He complains that when counsel learned this, they neither challenged the juror nor brought the potential bias to the court's attention. *Id.;* ECF No. 91 at 16. Defendant also claims, without substantiation, that it was "unlikely," given the

publicity surrounding the case, that "this juror" had no knowledge of the arrest.[3] ECF No. 91 at 16; ECF No. 91-2 (composite exhibit of media articles about operation Cupid's Arrow).

Except for Defendant's conclusory assertions, the only evidence he submits in support of his suggestion of Mr. Harden's bias is the affidavit of his father Ronald Chmielewski.[4] ECF No. 91-4 at 2-3. Mr. Chmielewski states:

> Juror No. 1, Owen Hardin, was an apparent acquaintance to [Defendant]. According to [Defendant], this juror had been a friend of a woman that [Defendant] had been dating prior to his arrest. [Defendant] noted this to his attorney, Tom Jansen, but no action was taken.

ECF No. 91-4 at 2. Despite the attestation that the affidavit is given "upon oath and affirmation of belief and personal knowledge" (*id.* at 1), Mr. Chmielewski's affidavit does not reflect personal knowledge of the situation, but merely reports what Defendant told him. Therefore, it is not probative. *See Ekokotu v. Federal Exp. Corp.*, 408 F. App'x 331, 335 (11th Cir. 2011) ("Affidavits must be based on personal knowledge and must set forth facts that would be admissible under the Federal Rules of Evidence."); Fed. R. Civ. P. 56(c)(4) ("an affidavit or declaration

---

[3] Defendant does not specifically allege that any other jurors were tainted by the pre-trial publicity.

[4] The affidavit does not identify the affiant's relationship to Defendant, but the Defendant's PSR indicates his father's name is Ronald Chmielewski.

used to support or oppose a motion must be made on personal knowledge [and] set out facts that would be admissible in evidence."); Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.")

Furthermore, the trial court conducted a thorough voir dire that would have ferreted out jurors who knew Defendant, or who had prior outside knowledge of the case. The district judge informed the potential jurors they would be required to decide the case based only on evidence introduced during the trial. ECF No. 67 at 11. The judge noted "if you know the defendant in the case and have personal knowledge of any of the parties or the facts of this case, obviously this would not be a good case for you to sit on." *Id.* at 14. The venire members were instructed to reveal if they had a strong or fixed opinion based on the parties involved. *Id.* The court specifically asked the panel if any of the prospective jurors knew or recognized Defendant, and none of them answered in the affirmative. *Id.* at 18. Finally, the judge asked if any of the panel knew anything about the case through any source at all or had read anything in the newspaper or seen anything on TV about the case, and again, none of the jurors, including Juror Hardin, indicated that they had. *Id.* at 26-27.

Defendant has presented neither evidence that juror Hardin harbored actual bias against him nor demonstrated that Hardin could not have put aside the bias and rendered a verdict based solely on the evidence. *Davis v. Jones*, 441 F. Supp. 2d 1138, 1178 (M.D. Ala. 2006). Based on the record in this case, Defendant has not shown that no competent counsel would have taken the action his counsel did, or in this case did not, take. *Hollis*, 958 F. 3d at 1122; *Chandler*, 218 F.3d at 1315. He has not met his burden of showing counsel was constitutionally ineffective and he is not entitled to relief.

   b.  <u>Failure to Report Witness Tampering</u>

Defendant's second claim of ineffective assistance of counsel is counsel failed to bring to the Court's attention the Government's alleged efforts to discourage three of his former co-workers from testifying for the defense. Defendant asserts in his reply that the three women, Jenn Bronson, Hope Anderson and Yvonne Nutting, were friends and colleagues who spent "nearly every day with [Defendant], often outside of work, and knew everything about him from work to relationships to personal life matters." ECF No. 91 at 16-17. Defendant says "Bronson and others were told they could lose their jobs if they were to even write letters of support as part of [Defendant's] sentencing packet" and when counsel was advised of this,

counsel merely responded "That is the way it is. Things like this happen all the time." *Id.* at 17. He references two attachments to his submission in support of this statement, but neither is probative.

Attachment Seven appears to be a screenshot of a thread of text messages between Jenn Bronson and someone named Ginny who was inquiring if Jenn would send a character letter on Defendant's behalf. ECF No. 91-7 at 2. Jenn responded she had spoken to an attorney friend who said such a letter would be public record and would "typically [be] seen as written in a supportive light." *Id.* Jenn said that she could not risk her job, so she would not be writing a letter. *Id.* When Ginny replied that the judge said the letters were not public record and would be destroyed after sentencing, Jenn said she was told the letter would be put in the sentencing file, and it would be public record. She further stated: "The state of Florida doesn't technically need a reason at all to fire any of us, but going publicly going (sic) against then (sic) is a good way for it to happen." *Id.* Contrary to Defendant's suggestion, this exchange provides no proof either that the Government tampered with witnesses or that anyone affirmatively attempted to dissuade the prospective witnesses from testifying.

Attachment Three purports to be an affidavit from Defendant's mother,

Virginia Chmielewski. ECF No. 91-3. She states:

> We asked Mr. Jansen about allowing character witnesses to be used at
> the trial. A group of Michael's friends and co-workers were willing to
> write letters of support, but they were *reportedly* approached by their
> employer and told they could possibly lose their jobs.

ECF No. 91-3 at 3 (emphasis added). As was the case with Mr. Chmielewski's

affidavit, despite Mrs. Chmielewski's attestation that her affidavit is made "upon

oath and affirmation of belief and personal knowledge," the document reflects

neither personal knowledge of the alleged warnings about the witnesses' jobs nor

sufficient detail to be useful.[5] *Ekokotu*, 408 F. App'x at 335; Fed. R. Civ. P. 56(c)(4);

Fed. R. Evid. 602.

Finally, even if the witnesses had chosen to testify or write letters in

Chmielewski's behalf, there is no record evidence of what each individual's

testimony or letter would have said, and hence there is no basis for a finding that

either the testimony or the letters would have altered the outcome of the case. *See*

*Johnson v. Alabama*, 256 F.3d 1156, 1187 (11th Cir. 2001) (speculation that a

missing witness would have provided helpful testimony is "insufficient to carry the

---

[5] Another affidavit signed by Virginia Chmielewski containing the same oath contains factually
incorrect, if not outright false, representations about what happened during jury deliberations.
*C.f.* ECF No. 91-6 at 2 (incorrectly reporting the time of the jury's original deadlock and the
Court's alleged threat to sequester the jury for the weekend if the jurors did not reach a verdict.)
*with* Transcript, ECF No. 70 at 85-91.

burden of a habeas corpus petitioner.") (citation omitted).

Again, Defendant has not shown that no competent counsel would have taken the action his counsel took, *Hollis*, 958 F.3d at 1122; *Chandler*, 218 F.3d at 1315, and he has not shown he was prejudiced by counsel's failure to bring this matter to the court's attention. *Strickland*, 466 U.S. at 694; *Jenkins,* 963 F.3d at 1270. Defendant has not met his burden on either prong of the *Strickland* test, and he is not entitled to relief.

c.  <u>Failure to Investigate Exculpatory Evidence</u>

Defendant next faults counsel for failing to investigate and present evidence that Defendant had not opened the second of two photographs sent to him by law enforcement that depicted an actual 14-year-old female. ECF No. 86 at 15.

During Defendant's chat with the undercover officer, he requested she send a picture. ECF No. 68 at 154. The first photo law enforcement sent Defendant was of a young woman's torso and legs. *Id.* at 154-55; *see* ECF No. 88-1 at 52. Defendant described the photo as "blurry" and asked for another. ECF No. 68 at 155. Law enforcement then sent a photo of a police intern taken when she was fourteen years old. ECF No. 68 at 156; *see* ECF No. 88-1 at 52. Defendant claims he never opened and viewed the second photo. He asserts the technical capability of proving he did

not open the photograph was "readily available to the defense," but because counsel

did not understand the significance of the second photograph, counsel did not bring

in an expert to testify that the email with the photo of the 14-year-old girl was never

opened or downloaded onto the phone. *Id.*

      Defendant's suggestion that his attorneys did not understand the significance

of the photo is belied by the record. The photo was indisputably an issue at trial.

During opening statements, counsel said:

> There was two pictures sent, but the evidence is going to show only one
> picture was received. And the picture that was received looks like an
> adult. The second picture my client never received. And in fact, he told
> [law enforcement] that when he was interviewed with them later. I
> never saw the second picture.

ECF No. 68 at 72. Two Government witnesses who were asked about whether

Defendant had seen the photograph admitted they could not verify he had actually

seen it. *See* ECF No. 69 at 251-52; 255-56; 277, 319-21. The lack of proof that

Defendant had seen the photograph was the basis for the motion for judgment of

acquittal. *Id.* at 341-343. Defendant testified that he did not see the second

photograph. ECF No. 69 at 354-56, 423-29. On redirect counsel introduced a series

of emails purporting to show Defendant did not view the photograph of the minor

child. *Id.* at 461. The defense renewed the motion for judgment of acquittal after the

close of all the evidence, again, based on the same arguments. *Id.* at 468-69. Counsel also emphasized during closing arguments that there was no proof Defendant had seen the second picture, and it was the Government's burden of proof. ECF No. 70 at 538.

The Government asserts Defendant's claim is conclusory because he offers no proof of the existence of the technological capacity to determine if a photograph was viewed, or of the availability of an expert who could have offered such testimony. Defendant claims in his reply that a "forensic analysis of Chmielewski's mobile device had previously confirmed that the second photograph was never viewed." ECF No. 91 at 18. In support of this, he references "Gov. Ex 8," which is the photograph in question, <u>not</u> proof that it had not been viewed. *See* ECF No. 88-1 at 52; ECF No. 68 at 156.

The test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted. *Dingle*, 480 F.3d at 1099. Counsel's overall performance indicates active and capable advocacy. *Harrington*, 562 U.S. at 111. Defendant has not established counsel was constitutionally ineffective.

d.  Selected Futile Defense

Lastly, Defendant asserts that counsel chose a "convenient and inexpensive" defense that was ultimately futile. His argument appears to be that entrapment was not a viable defense based on the evidence the Government introduced and Defendant possessed. To rely on an entrapment defense he maintains counsel should have presented allegedly available evidence about Defendant's character and his sexual and romantic history through testimony of his co-workers or expert testimony from Dr. Prichard, who prepared Defendant's psychosexual evaluation. ECF No. 86 at 16; ECF No. 91-8. He now claims his only viable defense was that he believed the person he was interacting with was an adult woman and not a minor.

To the extent Defendant now suggests, with the wisdom of hindsight, that he did not agree with counsel's decision to mount an entrapment defense, such a claim is contradicted by the record at trial. Before opening statements even began, defense counsel stated:

> I've discussed with my client our theory of defense. He's okay with our going with our theory of defense, which may change the Courts' ruling. I just want the record to reflect that we do plan on an entrapment defense.

ECF No. 68 at 27. Defendant did not then, or anytime thereafter, object to counsel's representation.

Defendant's attorneys actually mounted a two-pronged defense in this case. During opening statements, they asserted the Government could not secure a conviction because it would not be able to prove Defendant believed he was talking to a minor, and also, it would not be able to prove Defendant had any intent to commit a crime, but rather was talked into committing a crime by law enforcement. *See* ECF No. 68 at 82. Counsel's focus on the entrapment defense was not objectively unreasonable under the facts presented in this case. It was a strategic choice. As noted above, an attorney's performance is not deficient in hindsight for making one strategic choice versus another, particularly when counsel's overall performance indicates "active and capable advocacy." *Scott*, 890 F. 3d at 1259; *Harrington*, 562 U.S. at 111. Defendant has not shown counsel's defense was "so patently unreasonable that no competent attorney would have chosen it." *Dingle*, 480 F. 3d at 1099. He is not entitled to relief.

3. <u>The Government Violated Its Duty to Ensure a Fair Trial</u>.

Defendant's third claim is the Government violated its duty to ensure he had a fair trial in two separate respects. First, he contends the Government encouraged the "witness tampering" discussed in conjunction with his ineffective assistance of counsel claim in Ground Two(B), above, thus denying him the right to call witnesses

Bronson, Anderson, and Nutting for his defense. Defendant's desire to call additional witnesses besides himself was not mentioned at trial. If there was any evidence of wrongdoing, this claim could have been raised previously. To the extent Defendant attempts to rely on attorney error for his failure to present the claim, he has cannot establish cause and prejudice. There is simply no competent evidence supporting his assertion that the "USAO or its extended prosecutorial team (the team including Leon County Sheriff's Detective Knight) contacted the witnesses' superiors and caused the employers to interfere with the defense strategy by threatening to fire the witnesses if they testified for Mr. Chmielewski." ECF No. 86 at 17. Furthermore, the record is bereft of any indication of what the witnesses' testimony would have been and thus whether or the degree to which it would have helped his case. Defendant has not met his burden as to this claim. *Beeman v. United States,* 871 F.3d 1215, 1222 (11th Cir. 2017) *(quoting Rivers v. United States,* 777 F.3d 1306, 1316 (11th Cir. 2015)).

Second, Defendant claims "Government agents exceeded their authorization." ECF No. 86 at 17. By way of explanation, he maintains the Leon County Sheriff commenced the Cupid's Arrow sting operation to counteract negative publicity and "gain high publicity arrests, even if the evidence would normally have been

insufficient for prosecution." ECF No. 86 at 17. He asserts that of the 13 arrests made as a result of the Cupid's Arrow sting, "most" of the other individuals "had possession of a significant quantity of child pornography," whereas he did not. *Id.* at 18. He claims that his "highly visible position at the State Capitol thus served as a perfect foil for the bad publicity layered on the Sheriff." *Id.* Again, Defendant's assertions that his arrest was part of a conspiracy to improve the Sheriff's reputation are speculative, conclusory, and unsupported. Even with the quantity of evidence Defendant asserts was "insufficient for prosecution," a federal grand jury found it sufficient to support an indictment and a petit jury found Defendant guilty beyond a reasonable doubt of the charged offense. Again, Defendant has not met his burden of showing he is entitled to relief. *Beeman*, 871 F. 3d at 1222.

## III.    <u>CONCLUSION</u>

An evidentiary hearing is not necessary to resolve Defendant's claims because "the motion and files and records conclusively show that the prisoner is entitled to no relief." *See* 28 U.S.C. § 2255(b); *Rosin*, 786 F.3d at 877.  For the foregoing reasons, the court finds that Defendant has not shown that any of the claims raised in his motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 have merit.  Therefore, his motion should be denied in its entirety.

## IV.  CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2255 Proceedings provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), § 2255 Rules.

After review of the record, the court finds no substantial showing of the denial of a constitutional right.  § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, it is also recommended that the court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Based on the foregoing, it is respectfully **RECOMMENDED**:

1.    The motion to vacate, set aside, or correct sentence (ECF No. 86) be

**DENIED**.

2.    A certificate of appealability be **DENIED**.

At Gainesville, Florida on March 31, 2023.


s/ Midori A. Lowry
**MIDORI A. LOWRY**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the Report and Recommendation.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u>  An objecting party must serve a copy of its objections on all other parties.  A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.